IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LINDA G. CAMPBELL, | ) | |
| | ) | No. 3:12-cv-00306 |
| Plaintiff, | ) | |
| | ) | Judge Nixon |
| v. | ) | Magistrate Judge Brown |
| | ) | |
| COSTCO WHOLESALE CORPORATION, | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Defendant Costco Wholesale Corporation's Motion for Summary Judgment ("Motion"). (Doc. No. 33.) For the reasons stated below, Defendant's Motion is **GRANTED in part**, and **DENIED in part**.

I. BACKGROUND[1]

In September 2008, Costco Wholesale Corporation ("Costco") hired Plaintiff Linda G. Campbell ("Campbell") as a Licensed Optician for the Costco warehouse in Brentwood, Tennessee. Campbell reported to Optical Manager Frank Principe, who reported to Assistant Manager Paul Rowe,[2] who in turn reported to Warehouse Manager Gerry D'Arco. On January 14, 2010, Campbell requested a leave of absence under the Family and Medical Leave Act ("FMLA") from December 24, 2009, through January 15, 2010, which Costco approved. Campbell's FMLA leave was subsequently extended to March 15, 2010, which Costco again approved. Campbell returned to work on March 10, 2010, to her prior position of Licensed Optician.

---

[1] Unless otherwise indicated, the facts in this section are undisputed and taken from Plaintiff's Response to Statement of Undisputed Material Facts (Doc. No. 58) and Defendant's Response to Plaintiff's Additional Disputed Material Facts (Doc. No. 61).
[2] Rowe became Assistant Manager in mid-2010.

1

On September 3, 2010, Campbell requested FMLA leave dating back to August 31, 2010 until an indeterminate date. Costco only approved Campbell for FMLA leave for August 31, 2010 until September 3, 2010, explaining that she had already taken approximately eleven weeks of FMLA leave. Campbell did not return to work, however, until November 16, 2010, at which time she returned to her prior position of Licensed Optician.[3] On January 13, 2011, Campbell again requested FMLA leave for December 28, 2010 until January 28, 2011. Costco informed Campbell that she was not eligible for FMLA leave as she had not worked 1,250 hours in the previous twelve months, but Costco approved her leave as personal medical leave. On January 24, 2011, Campbell returned to work in her prior position of Licensed Optician.

On April 22, 2011, Campbell requested FMLA leave for April 13, 2011, until May 24, 2011, which Costco granted. Campbell did not return to work, however, until August 3, 2011, at which time she returned to her prior position of Licensed Optician. Shortly after returning from leave, around September 2011, Campbell applied for promotion to the position of Optical Manager, which had become open due to Principe's resignation in late August or early September. Campbell and two other candidates from local Costco stores—Glenda Bishop from the West Nashville warehouse and Tonya Garrett from the Brentwood warehouse—were considered for the position. Prior to applying, Campbell asked Principe for his opinion as to whether she had a chance of getting the position. Principe told Campbell he believed Bishop would be selected, and also that he thought Campbell's leaves of absence would be detrimental to her chances.[4] When Campbell told Principe that Costco should not use her leave against her, he responded, "I know, but I think they will." Rowe discussed the applicants with Principe, at

---

[3] The parties have offered no explanation for this additional leave, but Campbell was allowed to return without any apparent approval of the leave or disciplinary action from Costco.

[4] The parties agree Principe said either "he didn't think they would [select Campbell] because of [her] leave of absences [sic]" or "he didn't think they would hire [Campbell] because [she] had been out."

2

which time Principe recommended Garrett over Campbell because Garret had stronger skills and benchmark scores, and because Campbell had interpersonal issues with other employees.

While there is some dispute as to the exact format of the interviews, the parties agree that Campbell interviewed individually and in-person with Rowe and D'Arco. Campbell first interviewed with Rowe, during which Campbell alleges he told her that "he didn't know if [her] leave was legit or not," or "why [she] was out," but "whomever he hired he needed to know that they would be there, and that [Garrett] had been there."[5] Campbell then interviewed with D'Arco. Subsequently, D'Arco discussed the candidates with Principe, at which time Principe specifically recommended Garrett and Bishop, but did not offer an opinion on Campbell. Afterwards, D'Arco and Rowe discussed each of the applicants and their qualifications, including the interviews and their own personal experiences with the applicants. There is much dispute between the parties regarding the substance of this discussion between D'Arco and Rowe; however, it is undisputed that Bishop was eliminated first and that Rowe ultimately recommended Garrett to D'Arco.

The final decision regarding the promotion was made by D'Arco. In addition to the recommendations of Principe and Rowe, D'Arco considered Campbell's and Garrett's respective optical management experience in deciding whom to promote. Costco alleges D'Arco also considered several additional factors, including Campbell's and Garrett's responses in their interviews, their performance evaluations, and his own personal interactions with each candidate. D'Arco ultimately decided to select Garrett, and either D'Arco or Rowe informed Campbell that she had not been selected approximately one week after she had interviewed for the position. When Campbell asked D'Arco why she had not been selected, he told her, "We just liked

---

[5] Rowe admits that he likely made some comment referencing the need for the person hired "to be there," disputing Campbell's interpretation of said comment, but does not admit or recall making any reference to the legitimacy of her leave. (Doc. No. 40 at 21–23.)

3

[Garrett's] style a little bit better" and "[i]f it helps, it was very close." Campbell asked whether her leaves of absence had affected the decision, and D'Arco replied, "[a]bsolutely not."

Following Garrett's promotion to Optical Manager, Campbell received a disciplinary notice for shopping in the store while on the clock from D'Arco on November 9, 2011, and a "Coaching Event Chart"[6] for failing to request time off two and a half weeks in advance from Garrett on February 14, 2012. Campbell alleges these actions, along with others, were designed to isolate and punish her because of her FMLA leave, while Costco argues all subsequent actions resulted from violations of employee guidelines or were regular business operations. During this time, specifically on January 12, 2012, Campbell had requested FMLA leave for January 10, 2012, until January 31, 2012. Costco informed Campbell that she was not eligible for FMLA leave because she had not worked 1,250 hours within the preceding twelve months, but approved her request as a personal medical leave. Prior to March 2012, Garrett was not aware that Campbell had taken FMLA leave.

*A. Procedural History*

Campbell filed this suit on March 27, 2012, alleging Costco had violated the FMLA by both interfering with Campbell's FMLA rights and retaliating against Campbell for exercising her FMLA rights. (Doc. No. 1.) Costco filed its Answer to Campbell's Complaint on May 7, 2012, denying violations of the FMLA and raising five affirmative defenses. (Doc. No. 16.) Campbell filed an Amended Complaint on September 14, 2012 (Doc. No. 26), in which she neither dropped previous claims nor raised new claims, and Costco filed an Answer to the Amended Complaint on October 10, 2012 (Doc. No. 31), in which Costco again denied violations of the FMLA and raised the same five affirmative defenses. On December 20, 2012, Costco filed a Motion for Summary Judgment (Doc. No. 33), with an Appendix (Doc. No. 34), a

---

[6] The parties dispute the significance of the "Coaching Event Chart," but agree that, while not being a disciplinary action, was based on a rule violation by Campbell.

4

Memorandum in Support (Doc. No. 35), a Statement of Undisputed Material Facts (Doc. No. 51), a declaration of Gerry D'Arco (Doc. No. 35-1), a declaration of Paul Rowe (Doc. No. 35-2), a declaration of Tonya Garrett (Doc. No. 35-3), and several exhibits in support (Doc Nos. 36–50). On January 28, 2013, Campbell filed a Response in Opposition (Doc. No. 57), with a Response to Defendant's Statement of Undisputed Material Facts and Statement of Additional Disputed Material Facts for Trial (Doc. No. 58). On February 14, 2013, Costco filed a Reply to Plaintiff's Response in Opposition (Doc. No. 59), with a Response to Plaintiff's Additional Statement of Disputed Material Facts for Trial (Doc. No. 61), and an exhibit in support (Doc. No. 59-1).

## II. LEGAL STANDARD

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). A dispute about

5

a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable factfinder could not find for the non-moving party, summary judgment must be granted. *See Lexington-South Elkhorn Water Dist.*, 93 F.3d at 233.

### III. ANALYSIS

The FMLA entitles a qualifying employee to twelve weeks of leave per year, if he or she has "a serious health condition that makes the employee unable to perform the functions of [his or her] position." 29 U.S.C. § 2612(a)(1)(D) (2013). Under the statute, it is unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA]," *id.* § 2615(a)(1), or "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]," *id.* § 2615(a)(2). As such, two distinct theories of recovery arise from these provisions: (1) the "interference" or "entitlement" theory under § 2615(a)(1), and (2) the "retaliation" or "discrimination" theory under § 2615(a)(2). *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012).

Here, Campbell alleges Costco violated her FMLA rights under both theories. (Doc. No. 57.) Costco argues Campbell has failed to establish a genuine issue of material fact under either, and thus seeks summary judgment on all of Campbell's claims under the FMLA. The Court evaluates Costco's arguments with respect to each theory in turn.

*A. Interference Claim*

Costco asserts Campbell's FMLA interference claim fails as a matter of law because, although Costco failed to promote Campbell to the Optical Manager position, Costco allowed her to take FMLA leave and return to her prior position. (Doc. No. 35 at 4–7). The Court must determine whether Costco's failure to promote Campbell after she returned from leave—where she received all of her leave and returned to her prior position of Licensed Optician—amounts to an interference with or deprival of Campbell's FMLA rights.

An interference claim arises when an employer interferes with an employee's exercise or attempted exercise of an FMLA right. *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 400–01 (6th Cir. 2003); 29 U.S.C. § 2615(a)(1). "The issue is simply whether the employer provided its employee the entitlements set forth in the FMLA." *Arban*, 345 F.3d at 401 (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)). To prove interference under the FMLA, a plaintiff must show:

> (1) She was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)). Here, the parties do not dispute the first four prongs: that Campbell was a qualifying employee, Costco was a qualifying employer under the FMLA, Campbell was entitled to leave under the FMLA, and Campbell gave Costco adequate notice of

her intent to take leave. As such, the only issue in dispute is whether Costco denied Campbell FMLA benefits to which she was entitled.

The rights protected under the first provision of the FMLA, i.e. the basis of interference claims, have generally been (1) the right to twelve weeks of medical leave and (2) the right to reinstatement upon return from such leave. *See, e.g., Hoge v. Honda of Am. Mfg.*, 384 F.3d 238, 244 (6th Cir. 2004) ("To prevail on her interference claim under § 2615(a)(1), Plaintiff must establish that [Defendant] interfered with a FMLA right to medical leave or to reinstatement following FMLA leave."); *Taylor v. Union Inst.*, 30 F. App'x 443, 452 (6th Cir. 2002) (the plaintiff "must demonstrate either that she was denied the required leave . . . or that she was not restored to the same or equivalent position of employment that she held when the leave commenced" to succeed in an interference claim.) (internal citations omitted). The Sixth Circuit has explained that a broad range of actions by an employer may give rise to an interference claim, such that if an employer's action is "based, in whole or in part, on the fact that the employee took FMLA-protected leave," the employee has a cause of action for an interference claim. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007); *see also* 29 C.F.R. § 825.220(c) (2013) (prohibiting employers from "us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions"). As such, retaliatory actions by employers may give rise to an interference claim. *Seeger*, 681 F.3d at 282 ("[A] claim for retaliatory discharge is cognizable under either theory."). However, where an employee receives the full amount of FMLA leave requested, the employee is restored to her position upon return from leave, and the adverse employment action occurs only after return from leave, there has been no interference with the employee's substantive FMLA rights. *Seeger*, 681 F.3d at 282–83 (citing *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)).

8

At first glance, Campbell's claim that her FMLA leave was used against her in a promotion decision appears to fall precisely under the prohibitions in 29 C.F.R. § 825.220(c), as well as the broad language in *Wysong*. However, to interpret the interference theory as broadly as Campbell requests would essentially subsume all claims under retaliation theory into interference theory. On the other hand, the Court also does not adopt Costco's narrow reading of interference theory, which would seem to disallow for any retaliatory actions to be considered interference claims. Instead, the Court finds the reasoning of *Seeger* to be instructive. In that case, the plaintiff took qualified FMLA leave at intermittent periods due to pain in his leg and back, and was restored to his prior position upon returning to work. *Seeger*, 681 F.3d at 277–79. However, after his return, the plaintiff was suspended and eventually terminated for "over-reporting" his symptoms so as to gain the benefits of a separate paid leave policy without having to perform the work required to normally be eligible for that policy. *Id.* at 279–80. The plaintiff raised both interference and retaliation claims under the FMLA. *Id.* at 282. The Court in *Seeger* explained that, while retaliatory actions may give rise to claims under the interference theory, there had been no interference with the plaintiff's substantive FMLA rights: his requests for FMLA leave were approved, he had received all the FMLA leave to which he was entitled, and he was reinstated to the position he held prior to his FMLA leave. *Id.* at 283. Further, the *Seeger* Court endorsed the Eighth Circuit's interpretation that interference claims do not include situations where the adverse action occurs after both proper granting of leave and full reinstatement. *Seeger*, 681 F.3d at 282–83 (quoting *Stallings*, 447 F.3d at 1051).

Here, Campbell's requests for FMLA leave were approved. Indeed, she received *more* leave than she was entitled to under the FMLA. Upon return from each leave, she was reinstated to her prior position of Licensed Optician. Only after her return and reinstatement does Campbell claim her FMLA leave was used against her in a promotion decision. The Court thus

9

finds that Campbell cannot support an interference claim; Costco "did not shortchange [her] leave time, deny reinstatement, or otherwise interfere with [her] substantive FMLA rights." *See Seeger*, 681 F.3d at 283. As such, the Court **GRANTS** Costco's request for summary judgment as to Campbell's interference claim.

*B. Retaliation Claim*

Costco first asserts that Campbell cannot establish a *prima facie* case for a FMLA retaliation claim, and secondly asserts that, even if Campbell could establish a *prima facie* case, Costco can show legitimate, non-retaliatory reasons for its actions and Campbell cannot show those reasons are pretextual. (Doc. No. 35 at 7–8.)

The retaliation theory of liability under the FMLA is based on 29 U.S.C. § 2615(a)(2), which provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." *Arban*, 345 F.3d at 401. As previously discussed, federal regulations regarding the FMLA specifically prohibit employers from "us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. 825.220(c). "The central issue raised by the retaliation theory . . . is 'whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason.'" *Seeger*, 681 F.3d at 282 (quoting *Edgar*, 443 F.3d at 508). The appropriate standard for evaluating FMLA retaliation cases at summary judgment "depends not on the type of evidence presented (direct versus circumstantial), but on the type of claim brought (single-motive versus mixed-motive)."

*Hunter v. Valley View Local Sch.*, 579 F.3d 688, 692 n.2 (6th Cir 2009). The Court finds Campbell has alleged a single-motive retaliation claim and proceeds with the analysis as such.[7]

Where a plaintiff brings "an FMLA claim based on circumstantial evidence alleging a single motive for discrimination, it is evaluated under the familiar *McDonnell Douglas* burden-shifting framework." *Seeger*, 681 F.3d at 283. However, the *McDonnell Douglas* framework is inapplicable where the plaintiff produces direct evidence of discrimination. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008). As Campbell argues she has presented direct evidence of discrimination, (Doc. No. 57 at 9–11), the Court first examines whether such direct evidence exists.

1. Direct Evidence

"Direct evidence" in employment discrimination cases is evidence which "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Daugherty*, 544 F.3d at 707 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)). In other words, "direct evidence . . . *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Clark v. Walgreen Co.*, 424 F. App'x 467, 472 (6th Cir. 2011) (quoting *Daugherty*, 544 F.3d at 707). To succeed, the plaintiff must not only show that the employer was "predisposed to discriminate" because of the plaintiff's FMLA leave, but also that "the employer acted on that predisposition." *Daugherty*, 544 F.3d at 707.

Campbell argues the statements of Rowe and Principe constitute direct evidence that Costco used her FMLA leave against her in deciding not to promote her. (Doc. No. 57 at 10–11.) While the evidence presents a close question, the Court finds the alleged statements of

---

[7] While neither Campbell nor Costco specifically identify the claim in this case as either single or mixed-motive, Campbell's reliance on the *McDonnell Douglas* burden-shifting framework, which is only applicable to single-motive claims, shows she clearly intends to prove a single-motive claim.

11

Principe and Rowe fall short of providing direct evidence of discrimination. First, both statements only mention Campbell's leave generally without referring specifically to FMLA leave. While in some cases this may be enough to show her protected FMLA leave was explicitly considered, *see Hunter*, 579 F.3d at 692 (employer's admission that leave was one of two factors considered where nearly all leave was under FMLA is sufficient for finding of direct evidence), here, Costco properly counters that the majority of Campbell's leave was, in fact, not protected under the FMLA. (Doc. No. 35 at 5.) Further, neither of the statements Campbell offers were made by D'Arco, the ultimate decisionmaker for the promotion. While it may be possible to *infer* from such evidence that Campbell's FMLA leave was used against her by Principe and Rowe, and as such tainted D'Arco's decision because of their recommendations, a reasonable juror would not be required to make such a conclusion. Therefore, the Court finds Campbell has failed to provide direct evidence of discrimination.

2. Circumstantial Evidence

The Court next turns to evaluating whether Campbell can meet her burden under the *McDonnell Douglas* burden-shifting framework. Campbell alleges the statements by Principe and Rowe, because of both temporal proximity to her protected leave and the content of the statements, suffice to establish both a prima facie case and to prove the reasons offered by Costco are pretext. (Doc. No. 57 at 13–16.)

(a) Prima Facie Showing

To make a prima facie case in a FMLA retaliation claim, a plaintiff must show that: "(1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Daugherty*, 544 F.3d at 707 (citing *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007)). Because a plaintiff's "burden of proof at the prima facie stage is minimal," he must "put

12

forth [only] some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

With regards to Costco's failure to promote Campbell, the parties dispute only whether there is a causal connection between Campbell's FMLA leave and the promotion decision. Costco argues Campbell must present other "indicia of retaliatory conduct" in addition to temporal proximity, which Costco also argues she has failed to do, in order to establish causation. (Doc. No. 35 at 9–10.) Campbell responds that the temporal proximity of the conduct, as well as the content of alleged statements by Principe and Rowe, establishes a causal connection between her FMLA leave and Costco's failure to promote her. (Doc. No. 57 at 14–15.)

While the Sixth Circuit has cautioned "about the permissibility of drawing an inference of causation from temporal proximity alone," *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010), in the FMLA retaliation context, it has repeatedly held that acute temporal proximity may constitute indirect evidence of a causal connection at the prima facie stage, *Seeger*, 681 F.3d at 283–84 (a plaintiff's termination three weeks after reinstatement from FMLA leave and less than two months after he requested leave shows "causality by a preponderance of the evidence through close temporal proximity that is suggestive of retaliation"); *Clark*, 424 F. App'x at 473 (noting "timing matters" and holding that a two-month period between an employee's return from leave and termination established prima facie causal connection); *Bryson*, 498 F.3d at 571 (the plaintiff met her burden to show causality because her employer fired her three months after she requested FMLA leave); *see also Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal

13

proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."); *DiCarlo*, 358 F.3d at 421–22 (a twenty-one-day period between protected activity and termination "is significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive"); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (finding a three-month lapse between protected activity and termination was sufficient for temporal proximity at summary judgment).

In this case, D'Arco made the promotion decision within two months of Campbell's return from FMLA leave. (Doc. No. 58 at 37.) Further, the alleged statements by Principe and Rowe occurred even closer in time to Campbell's return from FMLA leave. (Doc. No. 58 at 20, 23.) Given this short period, the Court finds Campbell has satisfied her burden in establishing a causal connection between the protected activity and the adverse employment action and has thus established a prima facie case of FMLA retaliation.

(b) <u>Legitimate Reason</u>

Once a plaintiff establishes a prima facie claim, the burden of production shifts to the defendant to show it had a legitimate reason for the adverse action. *Bryson*, 498 F.3d at 570. An employee's return from FMLA leave does not grant the employee "any right, benefit, or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B) (2013).

The Court finds Costco has articulated a legitimate reason for not promoting Campbell to the position of Optical Manager. Specifically, Costco has presented evidence, based on D'Arco's testimony, that Garrett was more qualified than Campbell based on several factors, including: (1) Garrett's more recent and longer period of managerial experience, (2) the

comparison of performance evaluations of Garrett and Campbell, and (3) the recommendations of other Costco managers for the position.

(c) Pretext

Once a defendant offers evidence of a legitimate reason for terminating a plaintiff, "the burden shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination." *Bryson*, 498 F.3d at 570. "Courts have recognized that in discrimination and retaliation cases, an employer's true motivations are particularly difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage." *Singfield*, 389 F.3d at 564.

The Sixth Circuit has held that a plaintiff can show pretext in any of three ways: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). However, these three categories serve only as a "convenient way" to marshal evidence on the ultimate inquiry of whether the employer took adverse action against the employee "for the stated reason or not." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Chen*, 580 F.3d at 400). The question at summary judgment is then specifically "whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation." *Chen*, 580 F.3d at 400 n.4. Temporal proximity alone is insufficient to establish pretext, but "suspicious timing" can prove a "strong indicator" when coupled with other evidence. *Seeger*, 681 F.3d at 285.

Here, Campbell has specifically alleged the second and third types of pretext from *Chen*. First, she argues Costco's proffered reasons did not motivate the promotion decision, (Doc. No. 57 at 13), requiring her to show that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext."

15

*Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009). Secondly, Campbell argues Costco's reasons were insufficient to motivate the promotion decision, (Doc. No. 57 at 13), requiring her to show that other, similarly-situated employees who were not in the protected class were not subject to the same adverse action. *Manzer*, 29 F.3d at 1084.

As to whether Costco's proffered reasons were sufficient to motivate its decision, Campbell has produced no evidence outside of her own allegations that she was treated differently than similarly-situated co-workers. These conclusory allegations—that she was singled out by management for disciplinary action—fail to provide sufficient evidence that there is a genuine dispute of material fact regarding Costco's treatment of Campbell vis-à-vis other employees. *See Celotex*, 477 U.S. at 324. As such, the Court will determine whether Campbell has produced sufficient evidence for a jury to reasonably find that it is "more likely than not" that Costco's proffered reasons are pretext.

To determine whether Campbell has met her burden to show Costco's proffered reasons did not actually motivate its decision, the Court assesses whether allegedly discriminatory statements by non-decisonmaking supervisors suffice to establish pretext for the reasons given for the adverse employment action. Specifically, the question is whether Rowe's and Principe's statements regarding Campbell's leave are enough for a jury to reasonably find that Campbell's FMLA leave motivated D'Arco's decision to not promote her.

"When an adverse [employment] decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias, this Court has held that the employer may be held liable under a 'rubber-stamp' or 'cat's paw' theory of liability." *Arendale v. City of Memphis*, 519 F.3d 587, 604 n.13 (6th Cir. 2008). Such a situation is presented where "a biased subordinate, who lacks decisionmaking

power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Roberts v. Principi*, 283 F. App'x 325, 333 (6th Cir. 2008) (quoting *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484 (10th Cir. 2006) *cert. dismissed* 549 U.S. 1334 (2007)). While the Sixth Circuit has held that where "a decisionmaker makes a decision based on an *independent* investigation, any causal link between the subordinate's retaliatory animosity and the adverse action is severed," *Roberts*, 283 F. App'x at 333 (citing *Wilson v. Stroh Cos.*, 952 F.2d 942, 946 (6th Cir. 1992)) (emphasis added), the Supreme Court in *Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1193 (2011), specifically declined to adopt a "hard-and-fast rule" that an independent investigation will sever liability for the employer. The Court in *Staub* further explained that liability based on a "cat's paw" theory requires only that the discriminatory bias of the non-decisionmaking supervisor be a proximate cause for the adverse action, emphasizing that the decisionmaker's independent judgment and independent investigation may "*also* [be] proximate cause[s] of the employment decision, but it is common for injuries to have multiple proximate causes." *Staub*, 131 S.Ct. at 1192.

The Court finds Campbell has produced sufficient evidence such that a jury could reasonably find that Costco's proffered reasons are "more likely than not" pretext. First, the Court finds the statements of Principe and Rowe sufficient evidence to show impermissible bias on their part in considering Campbell's FMLA leave in their recommendations to D'Arco. As discussed above, both statements by Principe and Rowe were made close in time to Campbell's return from leave. Further, while temporal proximity is insufficient to prove pretext on its own, both statements also specifically refer to Campbell taking leave or "not being there." Costco argues Campbell cannot show Principe or Rowe were referring to her FMLA leave, and further that references to non-FMLA leave are permissible. However, Campbell need not show conclusively that Principe and Rowe were *only* referring to her FMLA leave—by referring to her

17

leave generally, Principe and Rowe were, at the very least, referring to both her FMLA leave and non-FMLA leave, allowing for the reasonable inference that her FMLA leave motivated, at least in part, their statements.

The Court finds it to be less clear as to whether Costco's liability has been severed by D'Arco's purported independent evaluation of the credentials of the candidates for the promotion. However, Costco admits that both Principe's and Rowe's recommendations were factors considered by D'Arco in making his promotion decision. (Doc. No. 35 at 18.) D'Arco's admission that the decision to promote Garrett instead of Campbell was "very close" also bolsters the argument that either recommendation, or the two in combination, could have been a motivating factor for his decision. (Doc. No. 51 at 38.) Further, while D'Arco may have relied on other factors as well, Campbell need not prove Principe's and Rowe's recommendation were the *only* guiding forces behind his decision, but rather that a jury could reasonably find their recommendations were proximate causes of his decision to not promote Campbell. *See Staub*, 131 S.Ct. at 1192. Costco's arguments—that D'Arco would have made the same decision without the recommendations and that Rowe's statement should be interpreted to refer to Campbell's work ethic and not her leave—rely solely on the depositions of D'Arco and Rowe, thus asking the Court to make "credibility determinations" and to "weigh the evidence," which it may not do at summary judgment. *See Anderson*, 477 U.S. at 255.

As such, the Court finds Campbell has shown a genuine issue of material fact exists as to whether Costco's proffered reasons for not promoting her were actually pretext for impermissibly using her FMLA leave against her in the promotion decision. As Campbell has satisfied her burden based solely on the statements of Principe and Rowe, the Court need not evaluate the sufficiency of Campbell's other circumstantial evidence allegedly showing

discriminatory retaliation. Accordingly, the Court **DENIES** Costco's request for summary judgment on Campbell's FMLA retaliation claim.

IV. CONCLUSION

For the above-stated reasons, the Court **GRANTS in part**, and **DENIES in part** Costco's Motion for Summary Judgment. (Doc. No. 33.)

It is so ORDERED.

Entered this \_\_10th\_\_ day of September, 2013.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT